UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Brenda M. Blake,

       Plaintiff,

  vs.                                ORDER

U.S. Bank National Association,

       Defendant.                   Civ. No. 03-6084 (PAM/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

At Duluth, in the District of Minnesota, this 19th day of May, 2004.

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A), upon the Defendant's Motion to Compel.

A Hearing on the Motion was conducted on April 21, 2004, at which time, the Plaintiff appeared by Adam A. Gillette, Esq., and the Defendant appeared by Melissa Raphan, Esq.

For reasons which follow, the Defendant's Motion to Compel is denied.

II.  <u>Factual and Procedural History</u>

In this action, the Plaintiff alleges that her employment was terminated because of sex and reprisal discrimination, in violation of Title 42 U.S.C. §§2000e-2, and 2000e-3, and of Minnesota Statutes Section 363.03.  She alleges that, while she was employed with the Defendant, she was subjected to sexual harassment by Donovan Williams ("Williams"), the branch manager who was assigned to train her.  After reporting Williams' inappropriate conduct to Gene May ("May"), who was the Defendant's In Store District Manager, and attending a meeting with May and Leslie Siegel ("Siegel"), who was a Human Resources Manager, the Plaintiff was advised that no disciplinary action could be taken against Williams, and they, allegedly, recommended that she accept a different position, with a lower salary.  Shortly thereafter, the Plaintiff met again with May and Siegel, and she alleges that, when she refused their suggestion, they began to criticize her work performance.  A few weeks later, in May of 2003, she was transferred to a different branch location, and was demoted to the lower-level position of a Co-Manager, which resulted in a change in benefits, including one week less of vacation time per year.

In August of 2003, when the Plaintiff was terminated, she filed a complaint with the Equal Employment Opportunity Commission, obtained a Notice of Right to Sue

letter, and commenced this action.  As a result of the Defendant's alleged actions, the Plaintiff asserts that she "has suffered and will continue to suffer a loss of past and future income, mental anguish, emotional distress, humiliation, embarrassment, and other damages," and she seeks compensatory and punitive damages.  See, Complaint.

### III.  Discussion

The Defendant seeks to compel the Plaintiff to submit to an Independent Medical Examination ("IME") with licensed psychologist, R. Owen Nelson ("Nelson"), to identify all of her medical providers and to sign authorizations for the release of records from those providers, and to continue the Plaintiff's deposition to allow the Defendant to inquire into matters concerning information that was requested prior to her earlier deposition, but which was not acquired until afterwards.  The Defendant bases this request on the Plaintiff's allegation of emotional distress, as well as on the fact that she sought counseling both before, and after, the alleged actions of the Defendant.

In addition, the Defendant asserts that the Plaintiff provided inaccurate and incomplete information as to her medical providers, executed authorizations for only some of those providers, and provided incomplete information to Dr. Janet Eaton, who is one of the counselors to whom she spoke, regarding the alleged harassment.

Among the inconsistencies detailed by the Defendant, the Plaintiff, at her deposition, denied having seen a counselor, other than for the alleged harassment, when, in fact, she had received counseling for two and a half years, in or about 1994 to 1996, after she was raped.  Further, she failed to inform Dr. Eaton that she had been raped, as to which she had previously sought counseling, that she had complained of harassment at a previous place of employment, that she had been terminated from two prior jobs, and that she had been arrested twice for driving while under the influence.  Dr. Eaton diagnosed the Plaintiff with an adjustment disorder, and the Defendant argues that, in order to counter that diagnosis, which was based on incomplete information, as well as to defend against any testimony by the Plaintiff's treating counselors, and/or the Plaintiff's own allegations of emotional distress, and her request for compensatory damages, the Plaintiff should be compelled to provide full and complete medical information and authorizations, and to attend an IME.

     A.    <u>An IME</u>.

     1.    <u>Standard of Review</u>.  As we have previously observed on a number of occasions, Rule 35 exists "as a forthright attempt to provide a 'level playing field' between the parties in their respective efforts to appraise the Plaintiff's psychological state."  <u>O'Sullivan v. State of Minnesota</u>, 176 F.R.D. 325, 327 (D. Minn. 1997),

quoting <u>Tomlin v. Holecek</u>, 150 F.R.D. 628, 632 (D. Minn. 1993); <u>Looney v. National Railroad Passenger Corp.</u>, 142 F.R.D. 264, 265 (D. Mass. 1992); see also, <u>Sauer v. Burlington Railroad Co.</u>, 169 F.R.D. 120, 124 (D. Minn. 1996); <u>Stewart v. Burlington Northern Railroad Co.</u>, 162 F.R.D. 349, 351 (D. Minn. 1995).  Nevertheless, when a plaintiff's mental condition has not been placed "in controversy," as that term is employed in Rule 35, the playing field is not uneven, and no leveling is required.  In such a circumstance, "good cause" is not presented which warrants the plaintiff to undergo the invasive examination contemplated by the Rule.  See, <u>O'Sullivan v. State of Minnesota</u>, supra at 327.

In <u>O'Sullivan</u>, we noted that "the Complaint's bare and boilerplate allegations of 'mental anguish,' 'emotional distress,' and 'embarrassment and humiliation,' provide a legally insufficient basis for concluding that the Plaintiff's mental condition is 'genuinely in controversy,' or that 'good cause exists for ordering [the] examination.'   <u>O'Sullivan v. State of Minn.</u>, supra at 327; see also, <u>Schlagenhauf v. Holder</u>, 379 U.S. 104, 118-19 (1964). We are mindful that some Courts have concluded that -- standing alone -- a plaintiff's allegation of emotional pain and distress, suffered at the instance of the defendants, is sufficient to allow a finding that her mental state has been placed in controversy, see, e.g., <u>Jansen v. Packaging Corp. of America</u>, 158

- 5 -

F.R.D. 409, 410 (N.D. Ill. 1994), but we respectfully disagree.  For example, in <u>Tomlin v. Holecek</u>, supra at 630, we determined that, as employed in Rule 35, "the term 'mental' refers to 'mental disorders and psychiatric aberrations,'" and that, "[t]o put his mental condition in controversy, a plaintiff must assert a claim of mental or psychiatric injury."  In reaching that conclusion, we were persuaded by the reasoning in <u>Cody v. Marriott Corp.</u>, 103 F.R.D. 421, 422 (D. Mass. 1984), where the Court declined to find that the plaintiff had placed her mental condition in controversy solely on the basis of her allegation that she had suffered "physical and emotional distress" as a result of the defendants' conduct.

Moreover, our construction of the "in controversy" requirement is not novel, and has been enunciated by other Courts which have found that a plaintiff places a mental condition in controversy when "'a claim of mental or psychiatric injury'" is alleged, <u>Turner v. Imperial Stores</u>, 161 F.R.D. 89, 93 (S.D. Cal. 1995), citing <u>Peters v. Nelson</u>, 153 F.R.D. 635, 638 (N.D. Iowa 1994), citing, in turn, <u>Tomlin v. Holecek</u>, supra at 630, and that mere allegations of "mental pain and anguish" do not suffice. <u>Bennett v. White Laboratories, Inc.</u>, 841 F. Supp. 1155, 1158 (M.D. Fla. 1993).  In <u>Turner v. Imperial Stores</u>, supra at 95, after a comprehensive review of the pertinent authorities, the Court determined that Rule 35 Motions, which seek Court-ordered

mental examinations, are typically granted when one or more of the following factors

are present:

> 1.   a cause of action for intentional or negligent infliction
>       of emotional distress;
>
> 2.   an allegation of a specific mental or psychiatric injury
>       or disorder;
>
> 3.   a claim of unusually severe emotional distress;
>
> 4.   the plaintiff's offer of expert testimony to support a
>       claim of emotional distress; and/or
>
> 5.   the plaintiff's concession that her mental condition is
>       "in controversy" within the meaning of Rule 35.

O'Sullivan v. State of Minnesota, supra at 328.

With the foregoing as our guide, we turn to the circumstances presented here.

> 2.   Legal Analysis.  The Defendant asserts that the Plaintiff has not

brought a mere "garden-variety" emotional damages claim.  Rather, she has made

claims for significant emotional distress damages, which may exceed $150,000.00,[1]

see, Plaintiff's Rule 26(a) Initial Disclosures., and she has been diagnosed with an

adjustment disorder.  In support of its position, the Defendant cites Javeed v.

---

[1]The Plaintiff has represented that this amount was included merely as part of
a settlement demand, and is not a part of the pleadings in this case.

Covenant Medical Center, Inc., 218 F.R.D. 178, 180 (N.D. Iowa 2001)(where the plaintiff sought treatment and considered antidepressant medication, the emotional distress "exceed[ed] the magnitude of symptoms associated with a garden-variety emotional distress claim," and the motion to compel an IME was granted), and E.E.O.C. v. Danka Industries, Inc., 990 F. Supp. 1138, 1141, 1143 (E.D. Mo. 1997) ("[B]ecause [the plaintiffs] claim that they have suffered emotional distress as a result of the defendant's actions, the defendant is entitled to conduct mental examinations."), and it attempts to distinguish O'Sullivan v. State of Minnesota, supra, because, here, the Plaintiff has sought counseling and was diagnosed with a psychological disorder. Further, the Defendant argues that good cause is demonstrated because Dr. Eaton's diagnosis was made without complete and accurate disclosure of the Plaintiff's prior medical and employment history.

The Plaintiff counters that she has, in fact, asserted only a "garden variety" emotional distress claim, that she will not offer any expert testimony or evidence of a diagnosed psychological disorder at Trial, and therefore, that she has not placed her medical condition in controversy. The Plaintiff argues that good cause cannot be demonstrated unless one or more of the factors enumerated in O'Sullivan is met. See,

O'Sullivan v. State of Minnesota, supra at 328.  She asserts that none of those five

factors are present here.

Clearly, the Plaintiff has not asserted a specific cause of action for intentional

or negligent infliction of emotional distress, nor has she conceded that her mental

condition is in controversy, despite the execution of certain medical authorizations.

In addition, the Plaintiff notes that she has not retained Dr. Eaton, nor will Dr. Eaton

testify at Trial, in any capacity.  However, there remains the question of whether the

Plaintiff has alleged a specific mental or psychiatric injury or disorder, and whether she

has claimed unusually severe emotional distress.  She asserts that she has done neither,

and again, she notes that Dr. Eaton, who made the adjustment disorder diagnosis, will

not be called as a witness.

In her Complaint, the Plaintiff makes only the general allegation that she "has

suffered and will continue to suffer a loss of past and future income, mental anguish,

emotional distress, humiliation, embarrassment, and other damages."  Further, she

appears to contend that she will not claim any ongoing psychiatric disorder, nor will

she introduce any expert testimony on the matter.  The only independent evidence

before the Court, as to the kinds of emotional distress suffered by the Plaintiff, are

excerpts of the Plaintiff's and Dr. Eaton's depositions.  Because Dr. Eaton will not be

testifying, we need not consider her impressions of the Plaintiff's symptoms. Instead,

we turn to the relevant statements made by the Plaintiff during her deposition.[2]

The Plaintiff testified that she had not been hospitalized, other than to have her

tonsils removed, and that she was "not subject to any physical ailment or unusual

stress," which would affect her deposition testimony. Plaintiff's Depo, at 6. She

stated that she had sought treatment for insomnia, and was diagnosed with a Restless

Leg Disorder, but she has not otherwise sought treatment, or taken medication, for

insomnia. Id. at 21. The Plaintiff testified that she has not sought treatment for stress,

or for anxiety, and that she has not experienced any panic attacks, or other symptoms

of anxiety. Id. at 23. However, she did testify that she had spoken to counselors

concerning the harassment that had allegedly occurred during her employment with the

Defendant. Id. at 16-17, 210-211, 270-277. The Plaintiff stated that Joyce Gable

("Gable") had told her that she was "traumatized by the harassment," id. at 270, and

the Plaintiff described symptoms as being stressed, "down," paranoid, not wanting

---

[2]Excerpts from the Plaintiff's deposition transcript are attached as Exhibit B to the Affidavit of Jennifer Dellmuth. The entire transcript was forwarded to the Court, subsequent to the Hearing, for our consideration of the Motion. For ease of reference, all citations thereto will be denoted as "Plaintiff's Depo," and the page number of the transcript will be cited.

anyone, other than her parents, to touch her, and feeling "grossed out and disgusted * * * because [Williams] had touched [her]." Id. at 273-275.

Although this case is somewhat distinguishable from O'Sullivan, in that the Plaintiff did seek counseling, and has been diagnosed with a psychiatric disorder, she has specifically asserted that she will not claim any ongoing psychiatric disorder, nor will she introduce any expert testimony on the matter. Further, the Plaintiff's statements at her deposition do not indicate any symptoms of emotional distress beyond the "garden variety" type of claim. The Defendant has failed to demonstrate that the Plaintiff has placed her mental condition in controversy, or that there is good cause to compel an IME. Therefore, we deny the Defendant's Motion to Compel an IME.

We remind the Plaintiff, however, that, having elected not to place her medical condition in controversy, she is not at liberty to call any health care practitioners to testify at Trial about her medical condition, and she will not be permitted to testify, at Trial, to anything other than the types of distress which are common to the claims asserted here, or any of life's other stressors. She will not be permitted to advise of any medical treatment, or medications, which she may relate to the Defendant's conduct, as she has removed the issue of any medical or mental insult, attributable to

the Defendant, from litigation.  Moreover, we simply deny the Defendant's request to schedule a Rule 35 examination, and we do not limit, in advance, the Defendant's right to inquire as to the other potential stressors in the Plaintiff's life, to the extent that those stressors are relevant to her claim for damages.

> B.      The Demand for Medical Records.

>      1.      Standard of Review.  Rule 26(b), Federal Rules of Civil Procedure,

governs the scope and limits of discovery by providing that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party," and that "[r]elevant information need not be admissible at the trial if the discovery sought appears reasonably calculated to lead to the discovery of admissible evidence."   "While the standard of relevance in the context of discovery is broader than in the context of admissibility * * *, this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery."  Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992).   Instead, "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."  Id.; see also, Wacker v. Gehl Co., 157 F.R.D. 58, 58 (W.D. Mo. 1994).

In determining the "threshold showing of relevance" in these circumstances, our

analysis necessarily implicates Rule 35(a), Federal Rules of Civil Procedure, given the

clear parallels between the analysis of whether a mental condition is "in controversy,"

for purposes of a mental health examination, and whether the issue of mental health is

"in controversy" for purposes of compelling a party to turn over her medical records.

See, e.g., Ulrich v. City of Crosby, 848 F. Supp. 861, 879 (D. Minn. 1994)(stating that

Rule 35 "lends an instructive focus" to the analysis of whether medical records may

be examined).  As provided by Rule 35(a):

> When the mental or physical condition * * * of a party * *
> * is in controversy, the court in which the action is pending
> may order the party to submit to a physical or mental
> examination by a suitably licensed or certified examiner * *
> *.  The order may be made only on motion for good cause
> shown and upon notice to the person to be examined and
> to all parties * * *.

Rule 35(a), Federal Rules of Civil Procedure (2001).

2.    Legal Analysis.   The Defendant argues that it is entitled to

authorizations for the release of the Plaintiff's medical records and, in particular, the

records from the counselor the Plaintiff saw following her rape, from her neurologist,

and from the doctors who performed her two elective surgeries.   The Defendant

asserts that those records are likely to contain information about the Plaintiff's

emotional state, and that our Court of Appeals has determined that a defendant is

entitled to a plaintiff's medical records, in a suit for sex discrimination, retaliation, and

sexual harassment.   See, Schoffstall v. Henderson, 223 F.3d 818, 823 (8th Cir. 2000);

see also, Walker v. Northwest Airlines, Civil No. 00-2604 at p. 9 (D. Minn., October

28, 2002).[3]   Finally, the Defendant notes that the Plaintiff has already executed

authorizations for some of her medical providers, and has not asserted any basis for

her refusal to provide the remainder.

The Plaintiff argues that her medical records are privileged, and that she has not

waived the privilege, because she has not placed her emotional condition in

controversy.   In addition, she asserts that Schoffstall and Walker are distinguishable,

because in the former, the plaintiff had claimed extreme emotional distress, and in the

latter, the plaintiff had identified three experts who might testify at Trial.   Here, the

Plaintiff reasserts that she will not call any expert witnesses to testify.

Walker seems remarkably similar to the case at bar.  There, the plaintiff sought

emotional distress damages as a result of adverse employment actions, and the

defendant sought to compel the plaintiff's medical records, and argued that the

---

[3]See, Affidavit of Jennifer Dellmuth, Exh. I.

plaintiff had placed his emotional well-being at issue, and that it was entitled to determine whether the plaintiff's emotional distress stemmed from causes unrelated to the alleged discrimination. Further, as with the Plaintiff in the case at bar, the plaintiff in Walker asserted that he did not "intend [to] present any expert testimony at trial regarding any physical or psychological illness, condition, or disorder," and that "he [did] not intend to use either medical records or medical testimony to prove his claim for emotional distress damages." Walker v. Northwest Airlines, supra at 7-8.

In Walker, the Court noted that, "regardless of whether Plaintiff's mental or emotional condition is in controversy, his medical records may be nonetheless relevant if they shed light on other contributing causes of Plaintiff's emotional distress claims." Id. at 8. Finding that medical records may be discoverable even if the "in contro-versy" requirement of Rule 35 is not met, the Court went on to hold that if the plaintiff "intend[ed] to seek anything more than nominal damages for any alleged emotional distress, then he is placing his mental condition at issue in this case, and [the defendant] is entitled to explore any evidence including Plaintiff's medical records, which may be relevant to such a claim." Id. at 9, citing Schoffstall v. Henderson, supra at 823. Finally, the Court held that, "regardless of whether Plaintiff intends to introduce his medical records or offer medical testimony to prove his alleged

emotional distress, [the defendant] is entitled to determine whether Plaintiff's relevant medical history indicates that his alleged emotional distress was caused in part by events and circumstances independent of [the defendant's] allegedly adverse employment action." Id. at 11. However, the Court limited the release of medical information to those records which pertained "to the treatment or diagnosis of a mental, emotional, or psychological condition," and ordered the defendant to modify its medical authorization accordingly. Id. at 12, 15.

However, as the Plaintiff argues, Walker is distinguishable because of the proposed introduction of expert witnesses, which is absent in the case at bar. Furthermore, Walker does not address the considerations which prompted our holding in O'Sullivan, or our heavy reliance upon the Supreme Court's reasoning, in Schlagenhauf, in framing that holding. We continue in the view that, absent some specific, particularized showing, the production of medical records are governed by the "in controversy" requirement of Rule 35. As a consequence, we deny the Defendant's Motion to compel the Plaintiff to produce authorizations for the release of her medical records.

C.      <u>Deposition</u>.

Finally, the Defendant requests that the Plaintiff's deposition be resumed in order to inquire into any new information obtained through her medical records and the IME.   Having denied the Defendant's Motion to compel an IME or further production of the Plaintiff's medical records, and having reviewed the two-day deposition of the Plaintiff, we find that the Defendant has had an adequate opportunity to thoroughly explore the relevant issues in this case, and there is no cause for a further inquiry with respect to the Plaintiff.   Therefore, the Defendant's Motion to Compel is denied, in its entirety.

NOW, THEREFORE, It is --

ORDERED:

That the Defendant's Motion to Compel [Docket No. 12] is DENIED.


                              BY THE COURT:


                              s/Raymond L. Erickson
                              _____
                              Raymond L. Erickson
                              UNITED STATES MAGISTRATE JUDGE